UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEAGO RAY PIOTEREK,

        Plaintiff,

v.

HEIDE E. WASHINGTON et al.,

        Defendants.
_____/

Case No. 1:25-cv-1554

Hon. Hala Y. Jarbou

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion leave to proceed *in forma pauperis*. (ECF No. 2.) Under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

    Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Washington. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Ward, Brown, Horton, Mahew, Hoffman, and Nickerson: (1) Plaintiff's official capacity claims; and (2) Plaintiff's First Amendment retaliation

claims. Plaintiff's personal capacity Eighth Amendment claims against Defendants Ward, Brown, Horton, Mahew, Hoffman, and Nickerson remain in the case.

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following personnel in their official and personal capacities: ECF Sergeant Unknown Ward and ECF Correctional Officers Brown, Horton, Mahew, Hoffman, and Nickerson, as well as MDOC Director Heide E. Washington. (Compl., ECF No. 1, PageID.4–5.)

On October 28, 2023, Plaintiff held his food slot hostage during lunch tray pickup. (*Id.*, PageID.7.) Plaintiff states that he did so because he "had been asking for hygiene material since breakfast time." (*Id.*) Defendant Ward and non-party Lieutenant Baker came to Plaintiff's cell to close the slot. (*Id.*) They told Plaintiff that he would not be getting hygiene materials, and Plaintiff "continued to hold the food slot." (*Id.*)

Plaintiff gave the food slot back at some point between 12:40 p.m. and 1:00 p.m., and the food slot was closed. (*Id.*) The Emergency Response Team (ERT) came to Plaintiff's cell shortly afterwards. (*Id.*) Defendant Ward ordered Plaintiff "to cuff up so that a strip search [could] be conducted." (*Id.*) Once Plaintiff left the cell, one correctional officer grabbed Plaintiff's left arm, another grabbed his right arm, and a third held Plaintiff's hands between his shoulders. (*Id.*) Plaintiff was escorted to the showers. (*Id.*) Plaintiff "was slammed into the corner of the shower stall before being slammed to the ground and receiving multiple punches and kicks all over [his] body." (*Id.*) Plaintiff was "assaulted until [his] face was covered in blood." (*Id.*)

Based upon the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights. (*Id.*) Plaintiff indicates that he could not identify any of the correctional officers until he "received the critical incident report which let [him] know who was on the move team." (*Id.*) Plaintiff states that he is holding "the whole ERT team responsible." (*Id.*, PageID.8.) Plaintiff alleges further that Defendant Ward was "directly involved because he was the supervising officer of the move team." (*Id.*) Finally, Plaintiff avers that Defendant Washington "is directly involved because she is the director of the MDOC and is suppose[d] to make sure prison staff do[] not violate [his] rights nor the United States Constitution." (*Id.*) Plaintiff seeks $125,000.00 in damages from each Defendant. (*Id.*, PageID.9.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

3

relief." *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Official Capacity Claims

As set forth above, Plaintiff sues Defendants in both their official and personal capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting

through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff only seeks monetary damages. (Compl., ECF No. 1, PageID.9.) However, the MDOC is not a "person" who may be sued under § 1983 for money damages. Similarly, Plaintiff may not seek monetary damages against Defendants in their respective official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Accordingly, the Court will dismiss Plaintiff's official capacity claims against Defendants for failure to state a claim upon which relief can be granted.

  **B.**  **Personal Capacity Claims**

    **1.**  **Claims Against Defendant Washington**

Plaintiff contends that Defendant Washington "is directly involved because she is the director of the MDOC and is suppose[d] to make sure prison staff do[] not violate [his] rights nor the United States Constitution." (Compl., ECF No. 1, PageID.8.) Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

5

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege facts suggesting that Defendant Washington encouraged or condoned the conduct of the other Defendants, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff fails to set forth any allegations at all regarding conduct that can be attributed to Defendant Washington. Thus, Plaintiff has not alleged that Defendant Washington "either encouraged the specific incident[s] of misconduct or in some other way directly participated in [them]." *Peatross*, 818 F.3d at 242 (quoting *Shehee*, 199 F.3d at 300).

Accordingly, for the foregoing reasons, Plaintiff's claims against Defendant Washington will be dismissed for failure to state a claim upon which relief can be granted.

### 2.     First Amendment Retaliation Claims

Plaintiff suggests that Defendants Ward, Brown, Horton, Mahew, Hoffman, and Nickerson violated his First Amendment rights because Plaintiff "held [his] food slot for a long time period." (Compl., ECF No. 1, PageID.7.) The Court construes Plaintiff's reference to the First Amendment to assert retaliation claims against these Defendants.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As set forth above, Plaintiff freely admits that he held his food slot hostage for a long period of time. An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g.*, *Earby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prisoner misbehavior. *Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *adopted*, 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011). "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395; *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that prisoner's statement that a hearing officer was "a foul and corrupted bitch" was insulting, derogatory, and questioned her authority as well as the integrity of the proceeding was insolent and violated an MDOC policy directive and, thus, could not be protected conduct); *Caffey v. Maue*, 679 F. App'x 487, 490 (7th Cir. 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment). Because the ERT was called to Plaintiff's cell in response to Plaintiff's misconduct, Plaintiff's complaint is devoid of facts suggesting that these Defendants retaliated against Plaitniff

7

for any protected conduct in which he was engaged. Accordingly, Plaintiff's First Amendment retaliation claims will be dismissed.

### 3. Eighth Amendment Excessive Force/Failure to Intervene Claims

The Court has construed Plaintiff's complaint to assert Eighth Amendment excessive force claims against Defendants Brown, Horton, Mahew, Hoffman, and Nickerson, and an Eighth Amendment failure to intervene claim against Defendant Ward.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th

Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending

9

conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011). Furthermore, an officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

There is an objective component and a subjective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that he had already closed his food slot when the ERT removed him from his cell, placed him in the showers, and assaulted him. (Compl., ECF No. 1, PageID.7.) Plaintiff received "multiple punches and kicks all over [his] body." (*Id.*) His "face was covered in blood." (*Id.*) Plaintiff alleges further that Defendant Ward was supervising the ERT. (*Id.*, PageID.8.) Plaintiff's complaint is devoid of facts from which the Court could infer that force was used "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7. Taking Plaintiff's allegations as true, the Court will not dismiss Plaintiff's Eighth Amendment claims against Defendants Ward, Brown, Horton, Mahew, Hoffman, and Nickerson on initial review.

## Conclusion

The Court will grant Plaintiff's motion for leave to proceed *in forma pauperis*. (ECF No. 2.) Having conducted the review required by the PLRA, the Court determines that Defendant Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Ward, Brown, Horton, Mahew, Hoffman, and Nickerson: (1) Plaintiff's official capacity claims; and (2) Plaintiff's First Amendment retaliation claims. Plaintiff's personal capacity Eighth Amendment claims against Defendants Ward, Brown, Horton, Mahew, Hoffman, and Nickerson remain in the case.

An order consistent with this Opinion will be entered.

Dated: December 2, 2025                    /s/ Hala Y. Jarbou
                                           HALA Y. JARBOU
                                           CHIEF UNITED STATES DISTRICT JUDGE